[Crim. No. 2197. Second Appellate District, Division One.—July 22, 1932.]

THE PEOPLE, Respondent, v. CONNOR MICHAEL SHAWN, Appellant.

Stephen Ward Sullivan for Appellant.

U. S. Webb, Attorney-General, Alberta Belford, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

TAPPAAN, J., *pro tem.*—Appellant was charged by an indictment, tried before a jury and found guilty of the crime of criminal conspiracy, in that he, together with others, conspired falsely and maliciously to procure one Walkup to be charged and arrested for the crime of resort-

ing, a violation of a city ordinance of the city of Los Angeles, and for the crime of drunkenness, also a violation of a city ordinance of the same city. Appellant appeals from the order of the court denying his motion for a new trial and also from the judgment as against him. The indictment charged appellant with criminal conspiracy as defined by subdivision 2 of section 182 of the Penal Code, which reads as follows: ''Criminal conspiracy defined. If two or more persons conspire: . . . 2. Falsely and maliciously to indict another for any crime, or to procure another to be charged or arrested for any crime; . . . ''

Appellant's first specifications of error are that the evidence produced at the trial was insufficient to establish the essential elements of the crime as charged and that aside from the testimony of Helen Lee, an admitted accomplice, there is no evidence to connect appellant with the crime charged, there being a lack of evidence to corroborate her testimony. In the consideration of these assignments, it becomes necessary to examine the testimony produced before the trial court. We shall here summarize the testimony as presented in the record. In making this summary no attempt has been made to quote the exact language used, except where it appears within quotation marks. The evidence shows that appellant, at the time the alleged transactions were had which it is contended constituted the criminal conspiracy, was employed by the Yellow Cab Company as safety director. Helen Lee, the admitted accomplice of appellant and to whom immunity had been granted prior to appellant's trial, had been employed by the cab company as an investigator. The only direct evidence tending to connect appellant with the alleged crime is found in the testimony of Miss Lee. She testified that on the day she had completed her work for the cab company she was approached by appellant and told by him that if she would move to the Philben Hotel he would give her a case to work upon. She thereupon moved to the indicated hotel and on the same day appellant called upon her there and left with her a handbag of some kind. Appellant instructed her to become acquainted with a man named Walkup who then resided at the Philben Hotel. She further testified that after she had made the acquaintance of Walkup she was instructed by appellant to invite Walkup to her room for the purpose

of getting him in a drunken condition. At one time she was instructed to get Walkup in a "compromising position". The reason for this as appears from her testimony was as follows: "Q. And was anything said during that period of time as to why you wanted to get him (Walkup) drunk or in a compromising position? A. He (appellant) said these people wanted to control him. Q. And that was the reason why you were to get him in that position, was simply because the people he represented wanted to control him? A. The people Mr. Shawn represented wanted to control the Major. Q. And that was your understanding all along, that that was why you were to get him in that condition? Is that correct? A. So they could take pictures of him, and that would embarrass him and force him to do as they wanted. Q. That was the reason they wanted this information, to force him to do as they wanted? A. That was my understanding." Miss Lee also testified that appellant furnished to her a bottle of wine and told her that a private detective would be one of the persons who would take the pictures of Walkup. Her testimony also shows that at appellant's direction she removed to the Leeward Apartments and from there she called Walkup over the telephone and invited him to have dinner there with her but that he refused but told her to meet him at the Elks' Club, which she did.

The private detective, Sandel, and his employer testified that appellant attempted to secure the services of Sandel in the "closing of a case" but that he refused to tell them what the case was. Neither Miss Lee's name nor Walkup's name was mentioned, though Miss Lee later told Sandel's employer she was engaged on a case with appellant.

Another witness testified that he knew both appellant and Walkup. That one week after Miss Lee came to live at the Philben Hotel appellant asked him to point out to him Walkup, appellant at the time telling him that Walkup "Had witnessed an accident for us over at the Yellow Cab Company."

Walkup testified that he was a police commissioner and had had "casual" meetings with Miss Lee, one at the Elks' Club. He did not mention or refer to appellant in any way.

One Patterson, a fellow employee of appellant's with the cab company, testified that he knew both appellant and Miss Lee. That appellant had introduced Miss Lee to him and that he had seen them together a number of times. That appellant asked him to drive his car to the Elks' Club to meet Miss Lee. That he did this, appellant telling him that he thought Miss Lee was "stepping out on him". That at appellant's request he, together with appellant, followed Miss Lee from the Elks' Club to her apartment house. That they saw her come from the apartment house and enter a drug-store. That at the time he left appellant and at his request again followed Miss Lee down town, where he met her and drove her to Echo Park, where they met appellant. They later went to witness' home, met his wife, had dinner together and played golf and then drove Miss Lee to a point near her home.

A police officer who it would appear from the record was detailed to watch Miss Lee testified that he engaged the room next to Miss Lee's room in the Philben Hotel, made her acquaintance, conversed and played cards with her, and from his room in the hotel overheard a conversation between Miss Lee and a woman friend in which Miss Lee said, "Mike is getting awfully mad because I seemed to be slow," and the friend replied, "I hope the Major does not get it in the neck too hard, because he seems to be an awfully nice old man." It appears from the record that at the time of the meeting of Walkup and Miss Lee at the Elks' Club there were also present some five or six police officers, both male and female; that some of them followed Miss Lee from the club, while others followed appellant and Patterson. They testified to the facts as already narrated and in addition testified that Miss Lee handed a slip of paper to a cab driver, which appellant afterwards secured, and that Miss Lee on her trip down town met a man and talked with him until Patterson came for her.

Other witnesses testified that Miss Lee talked to Walkup in the lobby of the hotel and that she met appellant and talked to him in Echo Park, another woman being present at the time who was identified as the other woman in the room at the time the conversation was overheard by the police officer next door. The foregoing contains, in brief, all the material evidence offered at the trial.

■ Appellant contends that "The evidence is legally insufficient to sustain the verdict of guilty, as it does not establish the essentials of the crime charged." As has been hereinbefore noted, appellant was indicted under the provisions of section 182, subdivision 2, of the Penal Code. This subdivision became a part of our laws as section 102 of the Crimes and Punishment Act (Stats. 1850, p. 242), the section then reading: "If two or more persons shall conspire to commit any *offense;* or falsely and maliciously to indict another for any *offense;* or to procure another to be charged or arrested for any *such offense; . . .* " This section was enacted as a part of the Penal Code of 1872, the only changes in so far as the subdivision is concerned being the substitution, as indicated by the italics, of the word "*crime*" for "*offense*" and the deleting of "*such*". This part of the section has not been amended since it was so enacted. Prior to the adoption of the Constitution of 1879 (art. I, sec. 8), certain crimes could only be prosecuted by indictment. (*People* v. *Vierra,* 67 Cal. App. 231, 232 [7. Pac. 640].) This was also true as to the procedure in the state of New York, our section 182 of the Penal Code being based upon the New York Penal Code, Field's Draft. When this fact is considered the reason for the somewhat particular phraseology of subdivision 2 of section 182 is obvious. Provision was made for offenses indictable and also those that could be prosecuted by complaint and information.

The indictment upon which appellant was tried and convicted alleges that appellant conspired to procure one Walkup to be *charged* and *arrested* for the crime of *resorting* and for the crime of *drunkenness.* The only evidence offered by the People at the trial as to the motive or reason for the alleged conspiracy is, as has been heretofore pointed out, an alleged desire upon the part of those engaged in the plot to embarrass Walkup and so "control him" and "force him to do as they wanted". There is no evidence that the arrest of Walkup was contemplated and it would seem that any arrest would have tended to defeat the alleged sinister design. The sufficiency of the evidence, as measured by the terms of the indictment and the section of the Penal Code under which it was drawn, must, therefore, rest upon the construction to be placed

upon the words "to be charged" as found in both the indictment and code. Respondent contends that "to be charged" as used in the code has no special legal significance, but should be deemed as synonymous with "to be accused". In the more than eighty years that the statute in question has been upon our statute books the courts of the state have not been called upon to construe the language just quoted, and the industry of counsel has failed to disclose, in other jurisdictions, authority of a convincing nature. In view of the history of section 182, that the part of the section containing the words in question were originally incorporated in the enactment to cover a procedural condition then existing, the limited class of crimes in which other than prosecution by indictment was authorized, it would seem highly improbable that the words "to be charged" were used in other than a strict and limited legal significance. The context, "to be charged or arrested" is illustrative of this construction in that "to be charged" referred to the formal charging by complaint or information, while the latter part "or arrested" without doubt was incorporated to cover those instances where the formality of a written "charge" was unnecessary or not complied with. In the case of *People* v. *Garnett,* 129 Cal. 364 [61 Pac. 1114, 1115], our Supreme Court in construing section 32 of the Penal Code, a section having a history identical as to origin and enactment with that of section 182 of the Penal Code, said: "Again the word 'charged', as used in the section, means a formal complaint, information or indictment filed against the criminal, or possibly an arrest without warrant might be sufficient. Mere general rumors and common talk that a party has committed a felony is wholly insufficient to fill the measure required by the word 'charged'."

In *People* v. *Lepori,* 35 Cal. App. 60, 63 [169 Pac. 692, 604], the court said: "Charged may mean a 'formal complaint, information, or indictment' (*People* v. *Garnett,* 129 Cal. 366 [61 Pac. 1114]), and as here used cannot mean anything more or different than information." Respondent has cited a number of cases from other jurisdictions, but upon examination it is evident that they are not controlling in the instant case, arising as they do under circumstances at variance with those here presented and in some instances under statutes differing in nature to our code.

The evidence produced at the trial fails to support the material allegations of the indictment under which appellant was convicted in that there cannot be found in the record any evidence whatsoever tending to prove that appellant intended or conspired "to charge" Walkup in any complaint or information with the alleged crimes or to cause his arrest therefor. Inasmuch as for the reasons indicated herein the judgment below must be reversed, the consideration of the other points specified by appellant in his briefs is unnecessary here.

The judgment and order appealed from are reversed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 4, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 18, 1932.

Shenk, J., dissented.